UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>ARSEN KASHKASHIAN, JR.,<br><br>Debtor, | CHAPTER 7<br><br>BANKRUPTCY NO. 15-11531 (ELF) |
| ROBERT H. HOLBER, Chapter 7<br>Trustee of the Estate of ARSEN<br>KASHKASHIAN, JR.,<br><br>Plaintiff,<br><br>vs.<br><br>ERIC J. BANKS,<br><br>Defendant. | ADVERSARY NO. 17-00067 (ELF) |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Defendant, Eric J. Banks, submits this Memorandum of Law in support of his pending motion to dismiss on the grounds that pursuant to Fed. R. Civ. P. 12(b)(6), the allegations in the Complaint fail to state a claim upon which relief can be granted. The allegations by Plaintiff are based on factually insufficient and fraudulent documents that Plaintiff has used as evidence of the Trustee's power to take the Property for inclusion in the Debtor's Estate. (All capitalized terms are as presented and defined in the Complaint.) The Real Estate Installment Sale Agreement (the "Agreement") and Mortgage that Plaintiff has presented to the Court as the sole basis for the Complaint are both fraudulent and incompetent and should not be used to obtain such relief from this Court. Plaintiff has presented an unsecured note as the Mortgage, which on

1

its face is not a Mortgage and, as such, is not only factually wrong as an asset belonging to Debtor's Estate, it is also an unsecured note procured to pay for a fraudulent conveyance.

**FACTS**:

For many years, the Debtor was engaged as the Defendant's attorney. On January 15, 2008, relying on that relationship and his assumption of the Debtor's expertise and professional honesty, the Defendant accepted the Agreement as a bonafide and enforceable document that would give him the reasonable and fair opportunity to purchase his home. Relying on the Debtor's representation as being the owner of the Property, the Defendant agreed to purchase the Property from the Debtor by financing the purchase under the installment sale payment arrangement set forth in the Agreement. The Defendant's credit prevented him from obtaining financing any other way. The Defendant made a down payment of $15,000 toward the purchase price of $325,000, with payments of $1875 monthly.

Compounding the Defendant's ill-placed reliance on the Debtor's veracity, it is well documented that historically, installment land contracts have been notorious for abuse of African Americans and low-income people. Recent articles document this abuse and entrapment.

(See https://www.nytimes.com/2017/07/07/business/dealbook/how-a-home-bargain-became-a-pain-in-the-butt-and-worse.html; and https://www.frbatlanta.org/economy-matters/community-and-economic-development/2017/06/14/research-examines-contract-for-deed-sales)

An excerpt from the article by the Federal Reserve Bank of Atlanta is especially chilling in its description that mirrors the Defendant's experience, with the following quote.

> "The buyer in these transactions builds no equity in the home and does not receive the deed until the last payment is made, often 20 or more years after the agreement is struck.... In some cases, unsophisticated borrowers with little access to legal or financial assistance have become entangled in financing schemes that charge high interest rates and include unforgiving forfeiture clauses.... At their worst ... contract for deed sales trap low-income

2

buyers in unfavorable arrangements that are difficult to escape without losing the home they are seeking to acquire."

Disturbingly, in the Defendant's case, he thought that he had legal assistance from the Debtor that would safely allow him to procure the Property..

From 2008 until 2016, the Defendant believed the Debtor to be the owner of the Property. It was not until December 2016, when the Debtor presented the Defendant a statement that the installment payments made to that date totaled $184,250, with a demand for an additional $70,000 for real estate taxes, insurance and water bills, that the Defendant became worried and alarmed. After failing to receive the Debtor's help, the Defendant contacted the undersigned attorney for assistance. The Defendant contends that he not only timely made the monthly note payments, he also made additional regular payments of $300 monthly to cover the taxes and water bills.

By failing to pay these bills, the Debtor has jeopardized the Defendant's investment that may cause him the loss of his home. As required by Pennsylvania's Installment Land Contract Law of 1965, 68 P.S. §901 *et seq.*, which governs an installment sales contract executed for property in Pennsylvania, the following provides the Debtor's legal obligation:

> "In determining what portion of the monthly installments shall be applied against principal on account of the purchase price, there **shall** be deducted all items authorized under the agreement of sale, such as taxes, water and sewer rentals, interest on the unpaid balance of purchase price, cost of all insurance premiums, repairs and assessments authorized under the terms of the agreement and the net balance thereof shall be applied to principal." (Emphasis supplied.) (See 68 P.S. §908. Allocation of Monthly Payments.)

After engaging the undersigned attorney to resolve the unexpected and unreasonable demands from the Debtor, the Defendant was informed of the undersigned attorney's discovery that the Debtor is not the owner of the Property and that the Debtor had not complied with his

3

obligation under the law to pay annual taxes and other municipal costs, such as water bills, that could be placed against the Property as liens.

The undersigned attorney discovered that the title to the Property is vested in Howard R. Foulkrod, as Trustee under a Trust dated June 19, 1997, for the benefit of Howard Foulkrod, by Deed from Howard R. Foulkrod and Anne Foulkrod, h/w, dated November 24, 1997, recorded 12/30/1997 in Book JTD 511, Page 11. (See attached as Exhibit "A," the Deed, the City of Philadelphia property records, and the real estate tax balance due as of August 30, 2017.) During the search for Howard R. Foulkrod, the Defendant received the Complaint on or about May 15, 2017, compelling the Defendant to stop all attempts for redress from the Debtor. Then, the Debtor caused additional confusion when the Debtor's associate attempted without authority and in stark conflict of interest on June 5, 2017, to file the Defendant's Answer to the Complaint with this Court. The Debtor's associate, Andre Dover, Esquire, shares a practice with the Debtor, as shown on the Certificate of Service filed with this Court. By his draft of the Answer, Mr. Dover attempted to cover up the fraud that was started against the Defendant in 2008.

Almost simultaneously, on or about June 16, 2017, the Defendant received the City of Philadelphia's Civil Tax Petition against Howard R. Foulkrod, at the address of the Property, that is a claim for delinquent taxes and petitioning for the right to sell the Property at a tax sale.

**ARGUMENT:**

The Plaintiff's factual background and claims for relief fail to state a claim upon which relief can be granted. The Debtor's fraud against the Defendant is plain from any point of view and is easily discovered and confirmed. It is axiomatic that no one can sell what is not owned. Upon receiving notice of the fraud and evidence of ownership of the Property from the undersigned attorney, the Plaintiff is bound to acknowledge that the Trustee cannot sustain its

4

claim to the Property or compel any payments from the Defendant as a part of the Debtor's Estate. Any attempt to do so goes against all reason and the requirements of the rule of law. The Plaintiff appears to have been misled by the Debtor's misrepresentation of his assets.

Without ownership of the Property, the Debtor has misrepresented to the Trustee his property and assets. Without ownership, the Debtor has committed fraud against the Defendant in such a dastardly and shameful fashion while providing legal services to the Defendant that his bad acts should be reported to the Pennsylvania Supreme Court as a disciplinary matter. Without the Debtor's ownership of the Property, there is no basis for obtaining the relief stated in the Complaint. Thus, *ipso facto*, Plaintiff simply has no claim against the Defendant.

**CONCLUSION:**

For the reasons stated above, respectfully, the undersigned attorney requests that the Defendant's Motion to Dismiss be granted with prejudice and that any other relief available to this Court should be granted to the Defendant, including a reimbursement of attorney's fees and court costs.

August 30, 2017

/s/*Yvonne B. Haskins*
Yvonne B. Haskins, Esquire
7035 McCallum Street
Philadelphia, PA 19119
Telephone: (215) 756-5166
Fax: (215) 242-3050
yvonne.haskins1@gmail.com

5

# EXHIBIT "A"

## COPIES OF DEED TO PROPERTY AND CITY TAX RECORD

11 8 N 15-85 ✓

D 0511 011

# DEED

**THIS INDENTURE MADE THE** 24th day of November in the year of our Lord one thousand nine hundred and ninety-seven (1997)

**BETWEEN** Howard R. and Anne Foulkrod, Husband & Wife
(hereinafter called the Grantor s), of the one part, and

TO

Howard R. Foulkrod, as Trustee under a Trust dated the 19 day of June 1997, for the benefit of Howard Foulkrod, Jr.

(hereinafter called the Grantee s), of the other part,

**WITNESSETH** That the Grantor s, parties of the first part have ------------------------ for and in consideration of the sum ONE DOLLAR ($1.00) lawful money of the United States of America, unto them -- well and truly paid by the said Grantees, at or before the sealing and delivery hereof, the receipt whereof is hereby acknowledged, have granted, bargained and sold, released and confirmed, and by these presents do grant, bargain and sell, release and confirm unto the said Grantee s their heirs and assigns, as tenants by the entireties between husband and wife and as joint tenants with right of survivorship as to the whole,

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereonerected,

SITUATE in the 23 ward of the City of Philadelphia, Pennsylvania.

BEGINNING at the Northerly corner of Fillmore Street (fifty feet wide) and Castor Avenue (seventy feet wide); thence extending Northeasterly side of Fillmore Street, One Hundred Eighteen feet One and Thre-eights inches to a point; thence extending Northeastwardly on a line at right angles to Fillmore Street, eighty six feet six and one-eighths inches to the Southwesterly side of the right of way of the Philadelphia and Frankford Railroad, thence extending

959 FILLMORE ST



0 0511 012

Southwesterly on a line curving to the right (at a radius of one thousand three hundred eighty five feet one and one-quarter inches) the distance of One Hundred feet seven and one-half to the Northwesterly side of Castor Avenue; thence extending Southwesterly along same sixty three feet nine inches to the first mentioned point and place of beginning.

BEING known as No. 959 Fillmore Street.

BEING the same premises, which Joseph Leporace and Marie Leporace, husband and wife, by deed dated 8/30/1982 and recorded in Philadelphia County in Deed book EFP 550 Page 373 granted and conveyed unto Howard R. Foulkrod and Anne Foulkrod, husband and wife, in fee.

**TOGETHER** with all and singular the buildings, improvements, ways streets, driveways, passages, waters, water-courses, rights, liberties, privileges, hereditaments and appurtenances, whatsoever unto the hereby granted premises belonging, or in any wise appertaining, and the reversions and remainders, rents, issues, and profits thereof; and all the estate, right, title, interest, property, claim and demand whatsoever of them the said grantors, as well at law as in equity, of, in, and to the same.

**TO HAVE AND TO HOLD** the said lot or piece of ground described with the buildings and improvements thereon erected along with the hereditaments and premises hereby granted, or mentioned and intended so to be, with the appurtenances, unto the said Grantees, their heirs and assigns, to and for the only proper use and behoof of the said Grantees, their heirs and assigns forever. As tenants by the entireties as to husband and wife and as joint tenants with right of survivorship as to the whole.

**AND** the said Grantors, their heirs, executors and administrators do covenant, promise and agree, to and with the said Grantees, their heirs and assigns, by these presents, that they the Grantors and their heirs, all and singular the hereditaments and premises hereby granted or mentioned and intended so to be, with the appurtenances, unto the said Grantees, their heirs and assigns, against them the said Grantors and their heirs, and against all and every person and persons whomsoever lawfully claiming or to claim

0-0511-013

the same or any part thereof, by, from or under them or any of them, shall and will by these presents.

WARRANT and forever DEFEND.

*IN WITNESS WHEREOF*, THE PARTIES OF THE FIRST PART HAVE HEREUNTO SET THEIR HANDS AND SEALS. DATED THE DAY AND YEAR FIRST ABOVE WRITTEN.

*SEALED AND DELIVERED* §
IN THE PRESENCE OF US:      § _Howard Fulford_ (SEAL)
_[signature]_                 _April_____ (SEAL)

BEST COPY AVAILABLE

# PHILADELPHIA REAL ESTATE TRANSFER TAX CERTIFICATION

BOOK NO. 0811  PAGE NO. 014

Complete each section and file in duplicate with Recorder of Deeds when (1) the full value/consideration is not set forth in the deed, (2) when the deed is without consideration, or by gift, or (3) a tax exemption is claimed. If more space is needed, attach additional sheet(s).

**A. CORRESPONDENT** — All inquiries may be directed to the following person:

Name: ARSEN KASHKASHIAN, ESQ.
Street Address: 1250 ROUTE 413
City: CRESTC  State: PA  Zip: 19007
Telephone: (215) 794-7956

**B. TRANSFER DATA**
Grantor(s): HOWARD + ANNE FOULKROD
Street Address: R.D.1 GREEN VALLEY RD, RD #3
City: PAXINOS  State: PA  Zip: 17860

Grantee(s): HOWARD J. FOULKROD
Street Address: R.D. 3 BOX 113 MOUNTAIN RD.
City: SUNBURY  State: PA  Zip: 17801

Date of Acceptance of Document: ___

**C. PROPERTY LOCATION**
Street Address: 959 FILLMORE STREET
City/Township/Borough: PHILADELPHIA
County: PHILA.  School District: PHILA.
Tax Parcel Number: ___

**D. VALUATION DATA**
1. Actual Cash Consideration: 100
2. Other Consideration: ___
3. Total Consideration: 100
4. County Assessed Value: 36,320
5. Common Level Ratio Factor: 3.30
6. Fair Market Value: $119,856

**E. EXEMPTION DATA**
1a. Amount of Exemption: 100%
1b. Percentage of Interest Conveyed: 100%

2. Check Appropriate Box Below for Exemption Claimed
☐ Will or intestate succession ___
☐ Transfer to Industrial Development Agency.
☐ Transfer to agent or straw party. (Attach copy of agency/straw party agreement).
☐ Transfer between principal and agent. (Attach copy of agency/straw trust agreement). Tax paid prior deed $___
☐ Transfer to the Commonwealth, the United States, and Instrumentalities by gift, dedication, condemnation or in lieu of condemnation. (Attach copy of resolution).
☐ Transfer from mortgagor to a holder of a mortgage in default. Mortgage Book Number ___ Page Number ___ Mortgagee (grantor) sold property to Mortgagor (grantee) (Attach copy of prior deed).
☐ Corrective deed (Attach copy of the prior deed).
☒ Other (Please explain exemption claimed, if other than listed above.) PARENT TO CHILD

Under penalties of law or ordinance, I declare that I have examined this Statement, including accompanying information, and to the best of my knowledge and belief, it is true, correct and complete.

Signature: [signed]   Date: 1/30/97

(SEE REVERSE)

BEST COPY AVAILABLE

COMMONWEALTH OF PENNSYLVANIA  :
                              : SS.
COUNTY OF BUCKS               :

On the 24th day of November, 1997, before me, the subscriber, a Notary Public in and for the Commonwealth and County Aforesaid; personally appeared Howard and Anne Foulkrod who acknowledged the foregoing to be their act and deed and desired that the same be recorded as such.

WITNESS my hand and seal the day and year aforesaid.

                                    _____
                                    Notary Public

Notarial Seal
Arlen Kaushkerian, Notary Public
Bristol Twp., Bucks County
My Commission Expires Nov. 14, 1999

THE ADDRESS OF THE GRANTEE IS:

RR #3, BOX 142 MOUNTAIN ROAD
SAYLORSBURG, PA 17801

Phila.Gov | Mayor's Office | City Council | Business | Residents | Leisure | Philly311

Home    Payment Options    FAQs    Contact Information

## Look Up Real Estate Tax

### City of Philadelphia Real Estate Tax

[by Property Address] >>
[by BRT Number] >>
(9-digits, no dashes)

The City and the School District of Philadelphia impose a tax on all real estate in the City pursuant to Philadelphia Code Chapter 19-1300, as authorized by 72 P.S. [section sign] 5020-201. The Office of Property Assessment (OPA) determines the value of the property on which the taxes must be paid.

**Windows 8 / Internet Explorer 10 users:** Please enable Compatibility View by clicking the Compatibility View button on the address bar. [?]

Real Estate Tax bills are sent in December for the following year and payments are due March 31st. If you pay on or before the last day of February, you receive a 1% discount. If you pay after March 31, you are subject to increased charges which are collectively called "additions". At year-end these charges are capitalized and become tax principal on which interest and penalty will accrue.

For questions about your account, please forward an email to revenue@phila.gov or call 215-686-6442.

If you are still having technical difficulties viewing the application, please contact us at 215-686-6628.

For questions about account payoffs, forward an email to retaxpayoff@phila.gov. To receive payoff amounts, please e-mail the statement of claim number from the legal action, the property address and/or the Office of Property Assessment number to retaxpayoff@phila.gov or fax it to 215-686-0582.

If the "Status" column on a tax year is marked LSLD, the corresponding Tax Lien for that year was sold to a private third-party lien-holder at a City Tax Lien Sale. Therefore, the amounts listed below for those years may not include all Real Estate Tax liabilities currently due. For more information regarding the name, address, and phone number of the new lien-holder, as well as the status of the lien(s), you may search the Philadelphia Court's civil docket at **Civil Docket Access**. You may enter or copy/paste the 13-digit lien number listed below (ex. 1504R14010000) to the Court's "Case ID" search box.

If the "Status" column on a tax year is marked SEQR, the corresponding Tax Lien for that year is in the sequestration program. For more information regarding the status of the sequestration proceedings, you may call 215-686-3629, or search the Philadelphia Court's civil docket at **Civil Docket Access**. You may enter the property owner's name in the Court's "Caption" search box.

Scroll down to view all results

## Customer Information

BRT#:233041600

**Property Address:** 00959 FILLMORE ST

**Owner Name:** FOULKROD HOWARD R

**Lien Sale Account:**

*If Lien Sale Account is marked Y, the amount due listed may not include all Real Estate Tax liabilities. Call 215-790-1117 for more information.*

**Includes Payments Through:** 05/15/2017



### Real Estate Tax Balance Information

| Year | Principal | Interest | Penalty | Other | Total | Lien# | City Solicitor | Status |
|---|---|---|---|---|---|---|---|---|
| 1998 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | | |
| 1999 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | | |
| 2000 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | | |
| 2001 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | | |
| 2002 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | | |
| 2003 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | | |
| 2004 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | | |
| 2005 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | | |
| 2006 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | | |
| 2007 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | | |
| 2008 | $2,946.99 | $2,587.25 | $241.62 | $367.75 | $6,143.61 | 1511R08511426 | ROMULO DIAZ | |
| 2009 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | | |
| 2010 | $3,451.70 | $1,993.36 | $241.62 | $362.40 | $6,049.08 | 1511R10511427 | SHELLEY R. SMITH | |
| 2011 | $3,793.37 | $1,849.27 | $265.54 | $375.69 | $6,283.87 | 1511R11511428 | SHELLEY R. SMITH | |
| 2012 | $3,939.56 | $1,565.98 | $275.77 | $368.08 | $6,149.39 | 1511R12511429 | SHELLEY R. SMITH | |
| 2013 | $4,081.15 | $1,254.96 | $285.68 | $358.51 | $5,980.30 | 1511R13511430 | SHELLEY R. SMITH | |
| 2014 | $3,316.23 | $721.28 | $232.14 | $348.08 | $4,617.73 | 1505R14020734 | SHELLEY R. SMITH | |
| 2015 | $3,316.23 | $422.82 | $232.14 | $330.17 | $4,301.36 | 1603R15051185 | SHELLEY R. SMITH | |
| 2016 | $3,464.23 | $129.91 | $138.57 | $315.86 | $4,048.57 | 1703R16108874 | SOZI PEDRO TULANTE | |
| 2017 | $3,012.37 | $90.37 | $0.00 | $0.00 | $3,102.74 | | | |
| MISC | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | | |
| TOTALS | $31,321.83 | $10,615.20 | $1,913.08 | $2,826.54 | $46,676.65 | | | |

An amount in parenthesis, e.g., ($1.00) indicates an overpayment for that year.

Status Descriptions